MARTIN L. STOUFFER ET AL *v.* THE CITY OF FORT SMITH ET AL

5-5538                                          467 S. W. 2d 175

Opinion delivered May 24, 1971

*Garner & Parker,* for appellants.

*Shaw, Ledbetter & Dailey* and *West, Core & Coffman,* for appellees.

CARLETON HARRIS, Chief Justice. Appellants, Martin L. Stouffer and his wife, Agnes Stouffer, instituted suit in the Sebastian County Chancery Court against the

City of Fort Smith,[1] and the appropriate officers of the city, seeking an order requiring appellees to re-zone certain property owned by the Stouffers, as commercial property. The complaint alleged that the property sought to be re-zoned had been used for commercial purposes at or prior to the time of the adoption of Act 108 of 1929, and had been used for such purposes since that time. It was further asserted that a petition had been filed with the appellees seeking the re-zoning and that appellants had appeared before the City Planning Board, which had refused to act upon the petition; that appellants had asked the City Commission of Fort Smith to grant the petition, but that said commission had refused the request. Appellants prayed that the court require appellees to approve the petition and to re-zone the property for commercial uses pursuant to the statutes of Arkansas. Affidavits in support of the complaint were offered as provided by Ark. Stat. Ann. § 19-2832 (Repl. 1968). After the filing of an answer denying the pertinent portions of the complaint, the case proceeded to trial, and following the taking of evidence, the court found that appellants' claim rested solely on their proof of compliance with § 19-2832; that under the evidence and testimony, appellants had failed to discharge the burden imposed upon them "to show by clear, convincing and a preponderance of the evidence, that they and/or their predecessors in title have used the property concerned 'at or prior to March 9, 1929,' and, 'continuously since that time for commercial purposes'". The complaint was dismissed, and from the decree so entered, appellants bring this appeal. For reversal, it is simply urged that the trial court erred in finding that appellants failed to prove commercial usage since 1929.

The claim of appellants that the property should be re-zoned is based on the provisions of Section 19-2832 (Act 115 of 1961), which reads as follows:

"Any property used for commercial purposes at or prior to the time of adoption of Act 108 of the Acts of the General Assembly of the State of Arkansas for

---

[1]The city was added as a party defendant after the original complaint had been filed.

the year 1929 [§§ 19-2811—19-2818], [2] and which has been used continuously since that time for commercial purposes, together with any other contiguous property used for rental or commercial purposes regardless of the period of such use, upon application to the planning commission and/or governing body in a city of the first class, accompanied by affidavit in support thereof, shall be zoned for commercial use."

Accordingly, the question in this litigation is whether it has been established that the property sought to be re-zoned has been used for commercial purposes continuously since March 9, 1929, (the date of the approval of Act 108 of 1929).

It might first be mentioned that the property is located in a residential zone, but was permitted as a non-conforming use when the property was zoned as residential. Appellants' effort to re-zone the property to commercial commenced in November 1966. The testimony of ten witnesses, including appellants, was offered on behalf of the Stouffers, but only four[3] of these, including Mr. Stouffer, testified relative to the length of time the property had been used for commercial purposes. This appellant, 45 years of age, stated that he and his wife had owned the property sought to be re-zoned, (the East Half of Lot 11 and all of Lot 12 in Oakland Heights Addition to the City of Fort Smith) for about five years; that prior to that time he and his brother had owned it as a partnership for three or four years; preceding that period, they had bought it from his mother, and before that, the property was owned by his father. He testified that it had never been used for residential purposes, but, to the contrary had been used to make a livelihood for the family. Stouffer is in the automotive parts business, and has three buildings on the land, an office building, a shop building, and a warehouse building. He said that he was seven or

---

[2] These eight sections were repealed by Act 186 of 1957.

[3] The other witnesses testified to such matters as the traffic count; that commercial property was located something like a quarter of a mile away; some who had land nearby testified that they had no objections to the Stouffer property being zoned commercial.

eight years old when he became familiar with the prop-erty and he could vaguely remember that the office building was constructed either in the latter part of 1929 or the first part of 1930. The witness stated that the first use of the property was as a service station and that he thought his oldest brother operated the service station for two or three years. He said that he thought it was next used as a sandwich shop until approximately 1932 or 1933; next, it was used as a grocery store from 1933 to 1938 or 1939. Stouffer testified that during that period the building was used for a number of different things, for parts, and machinery, "The building was being used as just a bunch of different things". He stated that he was in military service from the latter part of 1941 through 1945, and that the brick (shop) building was built after the war, being completed in 1947. Apparently, from his testimony, two types of businesses were being operated for a portion of the same time, since it will be remembered that he stated the building was used (by a man named Obre) for a grocery store from about 1933 until 1938 or 1939, and further stated that an excelsior plant operated between the years 1933 and 1935, "maybe 1936. There is some argument in the family about that". The witness said that he operates a rebuilder's supply business, not rebuilding; that nothing is rebuilt, but he only supplies rebuilders with rebuildable automobile parts.

Gus Bauer testified that he was familiar with the property in 1928 and 1929, and at that time there was a car repair shop located there; that the corner had never been used for residential purposes. Bauer then testified that Martin Stouffer had been working there all the time from 1929, "all the time, absolutely". The witness mentioned several types of businesses that were operated on the premises, and attempted to approximate the length of time these businesses were in operation; however, on cross-examination, he was unable to state the type of business that was operated during a particu-lar number of years, and the only fact that Mr. Bauer was emphatic about was that the property had never been used as residential property.

Fred Goebel testified that he had been familiar with the Stouffer property since the early thirties. "They worked on cars, and they had an excelsior plant, had a junkyard, had some kind of a little business place, a little rock building. I don't know what it was. But they have had something there; there has just been something there going on all the time. * * * Yes, sir, somebody has been making money doing something." When asked if Martin Stouffer had used the property a lot, he replied, "They were just a bunch of kids at that time. Yes, since then, Mr. Stouffer passed away, you know, and the boys have maintained some kind of a business there, to a great extent connected with the automotive end of the trade". He said there was a building on the property now used in the car parts business which used to be an excelsior plant; however, other proof offered reflected that this building burned in about 1936.

Charles Yutterman testified that he had been familiar with the property since 1928 or 1929, and that there had never been any residential use of the land. When asked about the types of businesses that had been operated on the property, he replied, "There was a little restaurant, filling station of some kind, then there was some kind of a garage, they had some kind of a mill deal there, and then it has been a salvage, rebuilding thing for several years". The witness was unable to give the periods of time when these several businesses had operated, or the order in which they occurred.

Julius Hogrefe testified on behalf of appellees that he had been familiar with the Stouffer property since 1935, and at that time there was nothing but a stone building on the premises, and there was no business activity in the building, it being vacant. He said that he saw it practically every day on his way to pick up the mail, and the building was vacant for a period of about five years. The witness stated that during that time there was no other business activity, *i. e.*, buying or selling, except that a shed was being built to house the excelsior plant. Hogrefe said that he visited Stouffer (apparently Martin's father) in the middle forties, prior to the construction of the brick building, and that

Stouffer was working on a boat (for personal use), but the boat was not completed, and that no other activity was going on. Twelve other persons testified on behalf of appellees, but their testimony actually amounted only to objections to the re-zoning, and their evidence was not pertinent to whether Section 19-2832 had been complied with.

We agree with the chancellor that appellants have not shown compliance with the provisions of the required section by a preponderance of the evidence. It might be here stated that we do not take the court's finding, earlier quoted, to mean that it was holding that the required burden of proof was clear and convincing evidence; such a finding would be erroneous, but it appears that when he stated, "Plaintiffs have failed to discharge the burden imposed upon them to show the clear, convincing and a preponderance of the evidence, * * *", that the property had been used continuously since March 9, 1929, for commercial purposes, that he was simply saying that the evidence offered by appellants was not sufficiently clear and convincing to constitute a preponderance. In other words, the witnesses would frequently make a general statement, but on cross-examination could not testify as to the specific facts in support of such a general statement. Of course, Stouffer himself was away for a four year period during the war, and there is actually no testimony covering this specific period. The testimony of Bauer is bound to be incorrect, at least in one respect, for he stated that Martin Stouffer had been working "all the time, absolutely" since 1929, and in fact stated that Marty "took over in 1929". Yet, the evidence clearly shows that Stouffer was only seven or eight years of age at that time. Be that as it may, it is easy to see why the chancellor considered that the proof lacked a convincing quality; the evidence was simply too vague to establish continuous commercial use since 1929. Also, there was affirmative evidence, heretofore mentioned, that there was a five year period when the property was not used at all. Let it be remembered that the statute does not simply require that it be shown that property has not been used for residential purposes; to the contrary, there

is a positive requirement, *viz,* that it be shown that it has been *continuously used for commercial purposes.*

In addition, the statute has been attacked as unconstitutional, it being asserted that it is in conflict with the prohibition contained in the Fourteenth Amendment to the Constitution of the State of Arkansas, same providing that the General Assembly shall not pass any local or special act. Under the view that we take, expressed in this opinion, there is no occasion to discuss that contention.

Since we are unable to say that the Chancellor's findings are against the preponderance of the evidence, it follows that the decree should be affirmed.

It is so ordered.